IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


CHARLES PATRICK COSGROVE,

                    Plaintiff,

          vs.                                    Case No. 07-2125-SAC


KANSAS DEPARTMENT OF SOCIAL AND
REHABILITATIVE (sic) SERVICES,
DONNA WHITEMAN, MICHAEL VANLANDINGHAM,
LOIS MITCHELL, SYDNEY KRAFT,
ALBERTA BRUMLEY and DELMAR BRUMLEY,

                    Defendants.




MEMORANDUM AND ORDER

          In this complaint filed under 42 U.S.C. § 1983, plaintiff contends defendants

violated his constitutional rights by acts related to his placement in an abusive foster

home when he was a child. The case comes before the court on defendants' motions to

dismiss the case. Plaintiff opposes the motions.

**Background**

          On November 1, 2004, plaintiff filed suit in federal court against the Kansas

Department of Social and Rehabilitation Services and various individuals, alleging

defendants violated his constitutional rights by placing him in an abusive foster home

(Case no. 04-3398-SAC). This court dismissed that case, finding it to be barred by the applicable statute of limitations. The Tenth Circuit reversed, finding plaintiff's claims of general physical abuse could have encompassed sexual abuse as well, entitling plaintiff to the benefit of the discovery provision in K.S.A. 60-523(a). Accordingly, plaintiff's § 1983 complaint would only be time barred if filed more than three years from the date he discovered or reasonably should have discovered that his injury or illness was caused by childhood sexual abuse, whichever occurred later. *Cosgrove v. Kansas Dept. of Social and Rehabilitation Services*, 162 Fed.Appx. 823, 827 (10th Cir. 2006). On remand, this court permitted plaintiff to file an amended complaint, but plaintiff did not do so. The court then dismissed plaintiff's claims against Delmar and Alberta Brumley without prejudice, and dismissed his claims against all other defendants with prejudice for failure to state a claim on which relief may be granted and because the action sought monetary relief against defendants who were immune from such relief.

Four days after plaintiff filed the federal case noted above, he filed a nearly identical case in Johnson County, Kansas. (Case no. 04CV8393) Defendants moved to dismiss based upon the statute of limitations, and the state court dismissed the case before either this court or the Tenth Circuit had ruled on similar motions in the federal case noted above. The Johnson County district court judge granted defendants' uncontested motions to dismiss, and dismissed plaintiff's action with prejudice finding plaintiff's claims were barred by the applicable statutes of limitations and statute of repose. Although plaintiff filed a notice of appeal from the state court's judgment of dismissal, plaintiff failed to docket the appeal properly so the appeal was dismissed in May of 2005.

The present case (No. 07-2125-SAC), filed by plaintiff in March of 2007, is identical to the previous state case in all material respects, but for its addition of the phrase "sexual abuse" and its addition of the term "individual capacity" to plaintiff's claims against the four SRS employees. Defendants previously filed motions to dismiss, *See* Dk. 6, 10, which plaintiff opposed, contending the statute of limitations accrued under K.S.A. 60-523 when he learned the abuse had caused his mental illnesses or injuries. On March 19, 2008, this court granted the motions to dismiss against all defendants, finding plaintiff's claims time-barred. Dk. 34.

The Tenth Circuit reversed the dismissal (Dk. 40), finding that the applicable limitations period accrued three years after plaintiff's discovery of causation of injury, not three years after plaintiff's discovery of his injury. The Tenth Circuit remanded the case, finding it was not clearly time-barred on the face of the complaint. After remand to this court, the defendants filed the motions to dismiss which are now ripe for decision. (Dk. 48, 49, 50).

**Motions to Dismiss**

The Kansas Department of Social and Rehabilitation Services (SRS),[1] moves the court to dismiss the case on the grounds of failure to state a claim for relief, sovereign immunity, and res judicata. The four individually-named SRS employees move the court to dismiss based on failure to state a claim for relief, sovereign immunity, qualified immunity, and res judicata. The Brumleys base their motion to dismiss only on res judicata and failure to state a claim for relief. None of the defendants raises the defense

---

[1]This defendant is erroneously named in the complaint as "The Kansas Department of Social and Rehabilitative Services."

of the statute of limitations.

**Standard**

The legal sufficiency of a complaint is a question of law. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiff's "allegations must move from conceivable to plausible." *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, --- F.3d ----, 2010 WL 3025021 *2 (10th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. ----, ----, 129 S.Ct. 1937, 1951-52 (2009).[2] Under this standard, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis deleted). The court must "accept as true all well-pleaded factual allegations ... and view these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), *cert. denied*, __ U.S.__, 130 S.Ct. 1142 (2010). The allegations must be enough that, if assumed to be true, the plaintiff plausibly and not

---

[2]The court applies the *Iqbal* standard rather than the previous standard in *Conley v. Gibson*, 355 U.S. 41(1957), despite the fact that plaintiff's complaint was filed before *Iqbal* was decided, as newly-announced interpretations of law from the United States Supreme Court can apply retroactively to cases not yet final. *See, e.g., Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 100 (1993); *Griffith v. Kentucky*, 479 U.S. 314, 323 (1987). *See Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007)(applying the pleading standard that had just been altered by the Supreme Court's *Twombly* decision to a case filed pre-*Twombly*),*rev'd on other grounds, Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937 (2009).

just speculatively has a claim for relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "On account of [plaintiff's] pro se status,[3] we liberally construe his filings, but hold him to the same rules of procedure as other litigants." Davis v. Kansas Dept. of Corrections, 507 F.3d 1246, 1247 n. 1 (10th Cir. 2007).

**Untimely response by plaintiff**

The court first addresses a procedural matter raised by defendants SRS employees who contend that plaintiff failed to file a timely response to the motions to dismiss, that plaintiff failed to show excusable neglect for that failure, and that pursuant to D.Kan.R. 7.4(b), plaintiff waived the right to file a response brief. The relevant rule provides:

> Absent a showing of excusable neglect, a party or attorney who fails to file a responsive brief or memorandum within the time specified...waives the right to later file such brief or memorandum. If a responsive brief or memorandum is not filed within the Rule 6.1(d) time requirements, the court will consider and decide the motion as an uncontested motion. Ordinarily, the court will grant the motion without further notice.

Defendants filed their motions to dismiss on September 17 and 18, 2009, and plaintiff had until November 18, 2009 to file his response. Dk. 46. On August 14th, plaintiff noticed  the court and the parties of his new address. Also, during a conference call on August 18, 2009, plaintiff provided his new address to  the court and counsel.

---

[3]Counsel currently represents plaintiff, having entered an appearance for plaintiff after his motion to appoint counsel was denied (Dk. 58) and his response brief was filed (Dk. 55). *See* Dk. 63. No motion to supplement the prior briefing has been filed.

Accordingly, defendants mailed their motions to dismiss to that address, and the motions were not returned to them. Dk. 52.

Plaintiff states that he did not receive any of the motions to dismiss, that he has had problems receiving mail, that he thought a stay was in effect because settlement negotiations were ongoing, and that defendants are aware that he was treated for mental illness. Dk. 55. Defendants SRS employees state that plaintiff's mother did contact them in an effort to seek a resolution to the case in the way of settlement, but all such contacts were after plaintiff's response time had run, *i.e.*, on November 19, 2009, November 24, 2009, and December 1, 2009.

The docket sheet reflects no activity after defendants filed the present motions to dismiss until plaintiff called the court on November 30, 2009, to advise that he had not received copies of the motions to dismiss. On December 1, 2009, approximately two weeks after his response was due, plaintiff filed a motion for an extension of time to respond, stating he would be incarcerated until December 9th, and requesting that documents be sent to him by certified mail at a different address than he had previously given to court and to counsel. The clerk then changed defendant's address on the docket sheet to reflect that new address.

Plaintiff's motion for an extension of time in which to respond to the dispositive motions was filed out of time. The court nonetheless finds excusable neglect in this matter based upon plaintiff's pro se status, his incarceration, release, and subsequent change of address, his allegation that he never received copies of the motions to dismiss, the parties' admission that there were some communications regarding settlement of the matter, and the court's general preference for matters to be decided

on their merits rather than on procedural failings. The court thus grants plaintiff's motion for untimely filing of his response brief, but denies plaintiff's request that documents be sent to him by certified mail.

Plaintiff's response states his understanding that res judicata is the sole issue raised in the motions to dismiss. Dk. 55. Plaintiff incorporates his previous brief regarding the issue of res judicata (Dk. 55, Ex. 1), which contends that his prior state court case was not dismissed on the merits but merely on procedural grounds which were not his fault due to his mental condition and his lack of access to the courts. Dk. 55, Ex. 1, p. 7-8.

### Res Judicata

The court first addresses defendants' claim that res judicata, or claim preclusion, bars the present case. Res judicata forecloses the litigation of matters that could or should have been advanced in an earlier action. *In re Estate of Reed*, 236 Kan. 514, 516 (1985). By the Full Faith and Credit statute, 28 U.S.C. § 1738, Congress has specifically required all federal courts to give the same preclusive effect to a state-court judgment that the judgment would be given in the courts of the state in which the judgment was rendered. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466 (1982); *Northern Natural Gas Co. v. Grounds*, 931 F.2d 678, 682 (10th Cir.1991). "The claim-preclusive effect of a state-court judgment in the context of a subsequent suit in federal court under § 1983 is therefore determined by state law." *Jarrett v. Gramling*, 841 F.2d 354, 356 (10th Cir. 1988). *Wilkinson v. Pitkin County Board of County Com'rs*, 142 F.3d 1319, 1322 (10th Cir. 1998). Accordingly,  the court first determines what preclusive effect Kansas would give the Johnson County decision to determine what

effect it should be given in this action. *Fox v. Maulding*, 112 F.3d 453, 456 (10th Cir. 1997).

Under Kansas law, "[r]es judicata (claim preclusion) prevents relitigation of previously litigated claims and consist[s] of the following four elements: (1) same claim; (2) same parties; (3) claims were or could have been raised; and (4) a final judgment on the merits." *Winston v. State Dept. of Social & Rehabilitation Services*, 274 Kan. 396, 413, *cert. denied*, 537 U.S. 1088 (2002). *Compare Rhoten v. Dickson*, 290 Kan. 92, 106 (2010) (applying three elements of res judicata under federal law to determine effect of prior federal decision). The rules of claim preclusion serve vital public interests: fostering reliance on prior adjudications, preventing inconsistent decisions, relieving parties of the cost and vexation of multiple lawsuits, and conserving judicial resources. *See e.g., Allen v. McCurry*, 449 U.S. 90, 94-96 (1980); *Hubbert v. City of Moore*, 923 F.2d 769, 772-73 (10th Cir. 1991).

**Application of elements to this case**

**- *Same parties***

A review of the state court complaint shows that plaintiff filed his Johnson County case against the very same defendants as in the present case. *See* Dk. 10, Exh. 1; Dk. 1. Plaintiff sued the four SRS employees only in their official capacities in his prior state case, and now sues them in both their official and individual capacities. Because Kansas case law addressing this matter is sparse, and Kansas courts often look to general treatises in such matters, this Court does the same.

The general rule of differing capacities in the context of res judicata prohibits application of res judicata where a party is sued in two different capacities.

In order that parties for or against whom the doctrine of res judicata is

sought to be applied may be regarded as the same in both actions, the general

rule is that they must be parties to both actions in the same capacity or quality.

The phrase "quality of the person" apparently refers to the status in which a party

sues or is sued. ... Under this rule, a party appearing in an action in one capacity,

individual or representative, is not bound by or entitled to the benefits of res

judicata in a subsequent action in which he or she appears in another capacity.

AMJUR, Judgments § 578 (footnotes omitted).

The Restatement explains it similarly. The rule of differing capacities in the

context of res judicata provides that "[a] party appearing in an action in one capacity,

individual or representative, is not thereby bound by or entitled to the benefits of the

rules of res judicata in a subsequent action in which he appears in another capacity."

Restatement (Second) of Judgments § 36(2) (1982). The rationale for this rule is that "in

appearing as a representative of another, a person should be free to take positions

inconsistent with those he might assert in litigation on his own behalf or on behalf of

others he represents in some other fiduciary capacity." *Id*. § 36 cmt. a.

Kansas has not addressed this rule or applied it in the context of res judicata.

Courts which have done so in examining an individual capacity suit following an official

capacity suit have reached different conclusions. *Compare Andrews v. Daw*, 201 F.3d

521, 525 -526 (4th Cir. 2000) (finding a government employee in his official capacity is

not in privity with himself in his individual capacity for purposes of res judicata), *with*

*Shewmaker v. Minchew,* 504 F.Supp. 156, 160 (D.C.D.C. 1980) (finding the opposite,

where barring plaintiff's present individual capacity suit did not run the risk of binding the

individual to any previous position inconsistent with his present posture), *affd*, 666 F.2d 616 (D.C. Cir. 1981).

In an abundance of caution, the court assumes that the Kansas Supreme Court may apply the rule of differing capacities. Because the SRS employees merely served as representatives of the government when sued previously in their official capacities and have different defenses available to them in a personal-capacity action than in an official-capacity action, they did not represent precisely the same legal right as they now do. Accordingly, the court finds that plaintiff's present suit against the four SRS employees in their individual capacities is not barred by res judicata. However, to the extent the present suit is against these defendants in their official capacities, it is barred by res judicata.

### *- Same claim*

Plaintiff's state court complaint is identical to the present federal complaint in all substantive respects,[4] but for two. First, plaintiff's federal complain adds the phrase "sexually abused" to paragraph 10, thus alleging that while in the Brumley home plaintiff was subjected to "extreme physical abuse/trauma on a daily basis including being struck, beat, forced into labor, *sexually abused*, and malnourished by the Brumley's..." Dk. 1, p. 5. Compare Dk. 10, Exh. 1, p. 3. Secondly, plaintiff adds that he is suing the four SRS employees in their "individual" as well as their "official" capacities. See Dk. 1, p. 1-1; Dk. 10, Exh. 1, p. 1-2 (addressed above).

---

[4]All other changes are non-substantive: Plaintiff changes his address  (Complaint ¶ 1); adds the Brumleys' address to ¶¶ 7 and 8; adds the words "to plaintiff" to ¶ 16; changes "unconstitutionally" to "unlawfully" in ¶ 19; and he reorders and adds the word "award" to the prayer for relief and the jury demand.

The Tenth Circuit has adopted the transaction approach to determine whether new assertions constitute new claims. *See Plotner v. AT & T Corp.*, 224 F.3d 1161 (10th Cir. 2000). Under that approach, "a cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence." *Id.* at 1169. The Kansas Supreme Court has not expressly adopted or rejected this transactional approach, except when examining the preclusive effect of federal decisions. *See e.g., Rhoten v. Dickson,* 290 Kan. 92 (2010); *Stanfield v. Osborne Industries, Inc.*, 263 Kan. 388, Syl. ¶ 1 (1997), *cert. denied* 525 U.S. 831 (1998). Here, of course, the court is bound to determine the preclusive effect the Kansas court would give to its prior state decision.

The court believes that the Kansas Supreme Court would adopt the transactional approach, because it has already tacitly done so.

> Although there are numerous Kansas cases discussing res judicata, none expressly adopt or reject the transactional approach. There are statements, however, in several cases indicating that Kansas approves of the transactional approach. *See, e.g., Carson v. Davidson*, 248 Kan. 543, 808 P.2d 1377, 1382 (1991) (res judicata " 'requires that all the grounds or theories upon which a cause of action or a claim is founded be asserted in one action or they will be barred in any subsequent action' ") (quoting *Parsons Mobile Prods., Inc. v. Remmert*, 216 Kan. 138, 531 P.2d 435, 437 (1975)); *Griffith v. Stout Remodeling, Inc.*, 219 Kan. 408, 548 P.2d 1238, 1240, syl. 3 (1976) ("[w]here two actions are bottomed on the same set of facts, a final adjudication upon the merits in the earlier action is generally res judicata in the later one").

*Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 360-61 (10th Cir. 1996). See

*Xiangyuan Zhu v. St. Francis Health Center*, 215 Fed.Appx. 717, 720, 2007 WL 274323,

*2 (10th Cir. 2007) ("Kansas appears to approve of this transactional approach.");

*O'Keefe v. Merrill Lynch & Co.*, 32 Kan.App.2d 474 (2004) (applying transactional

approach to determine effect of prior state decision, finding "claim," within the context of

res judicata, means the same factual transactions or series of connected transactions,

regardless of the number of substantive legal theories that were available to the plaintiff

based on those facts); *Collins v. State*, 2009 WL 196194, 199 P.3d 188, *4 (Table)

(Kan. App. 2009) (considering effect of prior state decision, finding "for purposes of

claim preclusion, the term *claim* "connotes a natural grouping or common nucleus of

operative facts").

Kansas courts find claims to be identical where plaintiff uses different words to

describe a claim, but makes the same argument and relies upon the same operative

facts as in his prior case. *See e.g.*, *Winkel v. Miller*, 288 Kan 455, 468 (2009) (finding

same claim where plaintiff presented "essentially the same complaints that were

litigated in *Winkel I*, modified only slightly to include unsupported allegations); *Collins*,

199 P.3d 188, *4 (finding same claim where the only differences between the two

motions were plaintiff's "legal theories with respect to the facts, not the operative facts

themselves"). *See also*, 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,

Federal Practice & Procedure § 4408 (2d ed. 2009) (simply offering new evidence does

not establish a new claim, even if the evidence could not have been produced the first

time the claim was made).

Accordingly, this Court applies the transactional test. "To determine whether

separate legal theories comprise the same transaction or series of transactions, courts examine whether the facts are related in time, space, origin, or motivation and whether they would form a convenient trial unit." *Rhoten*, 290 Kan. at 109-10. Here, this test is met as to plaintiff's addition of the phrase "sexual abuse" to one sentence of his complaint. The addition does not create a new or different claim than was stated in his otherwise identical claims in his state court complaint.

### - Claims were or could have been raised

Plaintiff has actually raised the same claims in not one, but two prior suits. As noted before, the allegations of his present complaint are identical to the allegations of his state court complaint, but for the few differences noted above.

Plaintiff's suggestion that his mental condition prevented him from fully prosecuting his prior cases does not change the result. Plaintiff writes in compete sentences, uses standard spelling, and expresses his thoughts clearly. *See* Dk. 55. Whatever plaintiff's mental condition may be, it has not prevented him from representing himself adequately to date, pro se.

Similarly, plaintiff's assertion of lack of access to the courts is immaterial. Plaintiff contends that the Bureau of Prisons physically "restrained [him] from responding to prior cases," but his sole assertions in support are that the BOP moved him from place to place and placed him in segregation for an unspecified length of time. Dk. 55, p. 7-8. Having reviewed the record in both of his prior cases, as well as this one, and seeing the number and nature of documents filed by plaintiff, the court finds the assertion of lack of access to the court to be conclusory and meritless, even assuming its relevance to this issue. Plaintiff is aware of how to file an extension of time, if necessary, such that

his various placements and/or segregation would not have precluded him from, for example, properly docketing his appeal.

The procedures involved in the earlier court proceedings complied with the minimum due process requirements of the 14th Amendment, as plaintiff had notice and opportunity to be heard. Plaintiff had a full and fair opportunity to be litigate these same claims previously in a court of competent jurisdiction. Accordingly, this element of the test is met.

### - Final judgment on the merits

Plaintiff contends only that the dismissal was not a final judgment on the merits. On March 11, 2005, the state court judge filed the journal entry of judgment and order granting defendants' motions to dismiss based upon the statute of limitations and statute of repose. That judgment expressly states that all of plaintiff's claims were dismissed with prejudice, and that the "[j]udgment is a final judgment." Dk.10, Exh. 2. Further, under Kansas law, a dismissal based upon the statute of limitations operates as an adjudication upon the merits. *See* K.S.A. 2000 Supp. 60-241(b)(1); *Taylor v. International Union of Electronic Workers, et al.*, 25 Kan.App.2d 671, 677 (1998); *Moore v. Luther*, 29 Kan.App.2d 1004, 1007 (2001), *abrogated on other grounds by Vorhees v. Baltazar*, 283 Kan. 389 (2007); *Anderson v. Estate of Peterson*, 97 P.3d 1072, 2004 WL 2160734, *2 (2004). Although plaintiff filed a notice of appeal from the state court judgment, he failed to docket the appeal and it was therefore dismissed. Dk. 10, Exh. 3. Accordingly, the state court's dismissal was a final judgment on the merits, fulfilling the final element of res judicata and barring plaintiff's present suit.

### - Effect of Possible Prior Error

Although the district court of Johnson County, Kansas, in Case No. 04-CV-08393, dismissed plaintiff's claim on the basis that it was barred by the statute of limitations set forth in K.S.A. 60-513, the Tenth Circuit subsequently ruled in Case number 04-3398 that K.S.A. 60-523 possibly applied, rendering plaintiff's federal case timely. By analogy, plaintiff's Johnson County action may actually have been timely filed, thus the Johnson County's dismissal may have been erroneous. Where an action is barred by res judicata, however, this Court does not decide whether the prior decision was correct, even if the decision relates to the statute of limitations.

Under Kansas law, "[a] judgment of a court of competent jurisdiction, even though erroneous, when not corrected by appeal or supplemental proceedings, is res judicata." *Aguras v. Lease Trucks, Inc.*, 193 Kan. 449, 452 (1964). Accordingly,

> Whether the [state] court was correct in entering judgment against the plaintiff, is immaterial at this stage of the proceeding. The fact that a judgment of a court of competent jurisdiction may have been erroneous does not preclude application of the principles of the doctrine of res judicata when such judgment has not been corrected by appeal or supplemental proceedings and has been allowed to become final and conclusive through inaction on the part of the litigant against whom it was rendered. (Citations omitted.)

*Kenoyer v. Board of Barber Examiners*, 176 Kan. 424, 429 (1954). This rule is well established. *See e.g., In re Bourke's Estate*, 159 Kan. 553, 559 (1945); *Kistler v. Fitzpatrick Mortgage Co.*, 146 Kan. 467, 71 P.2d 882, 885 (1937) (applying the rule while assuming the state court reached a wrong conclusion). *See also Federated Dept.*

*Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) ("Nor are the res judicata consequences of a final ... judgment on the merits altered by the fact that the judgment may have been wrong.). *Cf Murphy v. Klein Tools, Inc.* 935 F.2d 1127, 1129 (10th Cir.) (finding any determination by one federal court that an action is time-barred precludes a successive action in a second federal court, even if the second court would apply a different statute of limitations), *cert. denied*, 502 U.S. 952 (1991); *Newton v. Moten*, 124 F.3d 217, 1997 WL 537742, *3 (10th Cir.1997), *cert. denied*, 522 U.S. 1132 (1998); *Stokke v. Southern Pac. Co.*, 169 F.2d 42, 43 (10th Cir.1948).

When plaintiff failed to properly docket his appeal from the state court's dismissal in 04-CV-08393, the Johnson County, Kansas dismissal became conclusive. Plaintiff did not seek to set aside or alter the state court judgment, even after the Tenth Circuit found that his federal case may have been timely. The court rejects any attempt to question in this case the correctness of the dismissal of plaintiff's complaint in his state case.

In summary, the court finds res judicata bars plaintiff's claims against all defendants but for plaintiff's claims against defendants SRS employees in their individual capacities.

### Eleventh Amendment immunity

Turning to other grounds raised for dismissal, the SRS defendants also seek dismissal of all claims against SRS and against the individual SRS defendants in their official capacity because the Eleventh Amendment protects a state agency from suit in federal court, and state officials acting within their official capacity are not "persons" within the meaning of 42 U.S.C. § 1983.

The Supreme Court has interpreted the Eleventh Amendment to mean that States may not be sued in federal court unless they unequivocally consent to it or Congress unequivocally abrogates the immunity. *Green v. Mansour*, 474 U.S. 64, 68 (1985). This prohibition encompasses suits against state agencies. *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). Federal suits against state officials acting in their official capacities similarly fall within the amendment's proscription because "a suit against a state official in his or her official capacity ... is no different than a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). This law is well established and serves as an independent ground for barring plaintiff's claims for money damages[5] against SRS and the four SRS employees in their official capacities.

**No deprivation under federal law**

All defendants allege, without further argument, that plaintiff's complaint fails to state a claim for relief against them under 42 U.S.C. § 1983 because it "alleges no federal right" violated by any defendant. *See* Dk. 48, p. 6; Dk. 10, p. 6; Dk 49, p. 9-10; Dk. 50, p. 6.

To allege a valid claim under 42 U.S.C. § 1983, plaintiff must assert the denial of a right, privilege or immunity secured by federal law, by a person acting under color of state law. *Utah Animal Rights Coalition v. Salt Lake County*, 566 F.3d 1236 (10th Cir. 2009).

In his complaint, plaintiff alleges defendants violated his "constitutional right to

---

[5]Plaintiff seeks only money damages in this and in both prior cases.

due process of law, equal protection of the law, and the right to be free from cruel and unusual punishment as guaranteed by the United States Constitution," and claims he was deprived "of his constitutional rights under the Eighth and Fourteenth Amendments." Dk. 55, pp. 5- 6. Plaintiff further alleges defendants deprived him of these rights by being aware of the abuse in the Brumley foster home but failing to protect him from physical, mental, and emotional trauma while he was placed there, by failing to properly train and supervise the foster-care program directors and employees, by failing to investigate relevant complaints, and by covering-up the complaints of abuse and trauma, in violation of their duty of care. Dk. 1, p. 5-7.

Plaintiff's claims purportedly brought under the Eighth Amendment, however, are frivolous, since the complaint fails to allege that defendants' conduct toward him while in foster care at the Brumleys constituted "punishment" for any crimes he may have committed, and thus is outside the scope of the Eighth Amendment's protections. *See Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979) (cruel and unusual punishment clause of Eighth Amendment was designed to protect those convicted of crime); *United States v. Lovett*, 328 U.S. 303, 317-318 (1946); *Ingraham v. Wright*, 430 U.S. 651, 664 (1977) (cruel and unusual punishment clause does not apply to physical discipline of children in public schools).

Likewise, the complaint provides no allegation that plaintiff was treated differently from similarly situated children or to what definable class he belonged. "A threshold showing for an equal protection claim is that the plaintiff was treated differently than others who are similarly situated." *Gehl Group v. Koby*, 63 F.3d 1528, 1538 (10th Cir. 1995). Accordingly, plaintiff's claims of equal protection and Eighth Amendment

violations are dismissed for failure to state a claim upon which relief can be granted.

To the extent plaintiff broadly alleges due process violations, any such claim is subject to being dismissed because plaintiff alleges no personal participation by defendants (see below).

### No personal involvement

Defendants contend that plaintiff fails to sufficiently allege their personal involvement, as is required under § 1983 to set forth a cognizable claim for relief. The court agrees.

"Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937,1948 (2009)

> "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Supervisory status alone does not create § 1983 liability. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008). Rather, there must be "an affirmative link ... between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (quotation and brackets omitted).

*Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (post-*Iqbal*). This was the law pre-*Iqbal*, and remains the law post-*Iqbal. See Dodds v. Richardson*, --- F.3d ----, 2010 WL 3064002 (10th Cir. 2010).

"Courts should look to the specific allegations in the complaint to determine

19

whether they plausibly support a legal claim for relief ." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 n. 2 (10th Cir. 2007). "[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her, and what specific legal right the plaintiff believes the defendant violated."

*Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

Plaintiff makes general allegations that "all defendants" or "the defendants" acted in some manner. These general allegations (Dk. 1, paras 11-19 ), while stating what was done to plaintiff, do not provide notice to any particular defendant of his or her alleged actions in a particular instance. Plaintiff's complaint fails to show facts that, if proven at trial, would suffice to establish that a particular defendant's personal involvement caused the misconduct complained of. *See Dodds*, --- F.3d ----, 2010 WL 3064002 (regarding  § 1983 supervisor liability). Therefore, the claimed deprivations of plaintiff's federal rights fail to plausibly support a legal claim for relief.

**Qualified immunity**

The SRS employees in their individual capacity have raised the defense of qualified immunity. *See* Dk. 49, p. 9. Qualified immunity protects government officials performing discretionary functions from individual liability in federal claims unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Nielander v. Board of County Com'rs of County of Republic, Kan.*, 582 F.3d 1155, 1166 (10th Cir. 2009). *See Dodds*, 2010 WL 3064002 (10th Cir. 2010) (examining qualified immunity for § 1983 claim, post-*Iqbal*).

When a defendant raises qualified immunity, "the plaintiff must demonstrate that

the defendant's actions violated a constitutional or statutory right and that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Mink v.* Knox, 613 F.3d 995, 1000 (10th Cir. 2010)(quotation marks and citation omitted). A plaintiff's failure to make either showing enables a defendant to prevail on this defense. *See e.g., Shroff v. Spellman*, 604 F.3d 1179 (10th Cir. 2010). A court can first decide whether the facts alleged in the complaint constitute a violation of a constitutional right, or can first decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct. *Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808, 815-16 (2009).

As noted in the section immediately above, viewed in the light most favorable to plaintiff, the allegations of the complaint fail to contain sufficient facts to show that any defendant's conduct violated plaintiff's rights under federal law. Accordingly, the defendants SRS employees in their individual capacities are entitled to the defense of qualified immunity, even assuming the law was clearly established regarding plaintiff's due process rights for acts related to his placement in an abusive foster home when he was a child.

### John and/or Jane Doe Defendants

There is no provision in the Federal Rules of Civil Procedure for the naming of fictitious or anonymous parties in a lawsuit. *Watson v. Unipress, Inc.*, 733 F.2d 1386, 1388 (10th Cir. 1984); *Coe v. U.S. Dist. Court for Dist. of Colorado*, 676 F.2d 411, 415 (10th Cir. 1982). In fact, the Federal Rules provide that "[t]he title of the complaint must name all the parties...." Fed.R.Civ.P. 10(a). Because anonymous parties are not permitted by the Federal Rules and plaintiff has not identified them, defendants John

and/or Jane Does shall be dismissed.

IT IS THEREFORE ORDERED that defendants' motions to dismiss (Dk. 48, 49, 50) are granted.

IT IS FURTHER ORDERED that plaintiff's motion for extension of time (Dk. 51) is granted in part and denied in part, and that plaintiff's motion for order (Dk. 47) is denied as moot.

**IT IS SO ORDERED.**

DATED:  This  29th day of  September 2010 at Topeka, Kansas.


 s/ Sam A. Crow
SAM A. CROW
U.S. Senior District Judge